IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00397-MR

| | |
|---|---|
| **BRIAN KEITH ROBINSON,** )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>**EDDIE BUFFALOE, Secretary,** )<br>**North Carolina Department of** )<br>**Public Safety,**[1] )<br>)<br>Respondent. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Petitioner Brian Keith Robinson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. 1, as amended by Docs. 3, 4, 5]; the Respondent's "Motion to Dismiss on Procedural Default Grounds (Independent and Adequate State Law Ground)" [Doc. 11]; the Petitioner's

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that "the petition must name as respondent the state officer who has custody" of the petitioner. Rule 2(a), 28 U.S.C. foll. § 2254. North Carolina law mandates that the Secretary of the Department of Public Safety is the custodian of all state inmates and has the power to control and transfer them. See N.C. Gen. Stat. § 148-4 (2017) ("The Secretary of Public Safety shall have control and custody of all prisoners serving sentence in the State prison system[.]"). Accordingly, Eddie Buffaloe, the current Secretary of Public Safety, is the proper respondent in this action.

letter, which the Court construes as a Motion to Transfer [Doc. 19]; and the Petitioner's "Motion to Compel" [Doc. 20].

## I. BACKGROUND

The Petitioner Brian Keith Robinson is a prisoner of the State of North Carolina. On January 10, 2018, the Petitioner was found guilty by a jury in Mecklenburg County Superior Court of one count of possession of a firearm by a convicted felon. [Doc. 12-4: Verdict Sheet]. The North Carolina Court of Appeals summarized the evidence presented at trial of the Petitioner's gun possession as follows:

> In July 2016, two police officers went to Defendant's residence to serve an outstanding domestic warrant on him. Upon arriving at Defendant's home, the officers noticed three or four spent shell casings as well as plastic bags typically used to hold drugs in the driveway and yard. The officers knocked on the door, and Defendant asked who was there. When the officers told Defendant it was the police, they heard a loud noise, which the officers opined sounded like something metal or glass hitting the floor.
>
> Defendant opened the door to the officers, but refused to permit them entry into his residence. The officers obtained and executed a search warrant for Defendant's home. During the search, officers found ammunition, an envelope addressed to Defendant with ammunition inside, and a nine millimeter handgun. Possession of this firearm and ammunition was in violation of a Domestic Violence Protective Order (DVPO) entered the month before.

State v. Robinson, No. COA18-661, 2019 WL 661556, at *1 (N.C. Ct. App. Feb. 19, 2019) (unpublished).

After the jury returned the guilty verdict, the Petitioner pled guilty to having attained habitual felon status. [Doc. 12-2: Transcript of Plea Form]. On January 11, 2018, the trial court sentenced the Petitioner to a term of imprisonment of 90 to 120 months. [Doc. 12-3: Judgment]. After sentencing, the Petitioner gave notice of appeal in open court. [Id. at 2; Doc. 12-5: Transcript of Oral Notice of Appeal].

On direct appeal, the Petitioner raised two claims: (1) that the trial court erred in denying his motion to dismiss the firearm charge based on insufficiency of the evidence; and (2) that the trial court erred in admitting evidence, over his objection, that he was subject to a Domestic Violence Protective Order at the time of his arrest. Robinson, 2019 WL 661556, at *1-2. On February 19, 2019, the North Carolina Court of Appeals affirmed the judgment. Id. at *3. The Petitioner appealed to the North Carolina Supreme Court, which dismissed the Petitioner's notice of appeal and denied his petition for discretionary review on May 9, 2019. State v. Robinson, 372 N.C. 292, 826 S.E.2d 717 (N.C. 2019).

On June 24, 2019, the Petitioner filed a petition pursuant to 28 U.S.C. § 2254 within this Court. [Case No. 3:19-cv-00303-FDW, Doc. 1]. In this petition, the Petitioner raised Fourth Amendment challenges to the legality of the search during which the firearm was discovered. He also claimed that the prior convictions used to prove his habitual felon status were used again to calculate his criminal record level at sentencing, resulting in an unconstitutionally enhanced sentence. [Id.]. On initial review, this Court dismissed the petition without prejudice on the grounds that the Petitioner had not exhausted his claims in state court. [Id., Doc. 4].

On November 22, 2019, the Petitioner filed a motion for appropriate relief ("MAR") in state court. [Doc. 1 at 39-54: MAR]. The Petitioner raised four primary claims in his MAR. First, he argued that the search of his residence was conducted in violation of the Fourth Amendment. Second, he argued that the firearm found to be in his possession should have been tested for DNA to show that the firearm was not fired, not touched by him, and not his handgun. Third, he argued that he was unlawfully sentenced in that: (a) the principal felony was one of the three prior felonies supporting his habitual felon status; (b) he was separately sentenced for attaining habitual felon status; (c) he was not properly adjudged to have attained habitual felon status because he only stipulated to habitual felon status and (d) the

4

calculation of his prior record points and resulting prior record level to which he stipulated was not correct. Finally, the Petitioner argued that certain prior convictions should be expunged from his record pursuant to a number of bills introduced in the North Carolina House and Senate. [Id.]. Importantly, however, the Petitioner include in his MAR either of the grounds on which he had appealed his conviction.

On February 10, 2020, the trial court (hereinafter "the MAR court") entered an Order denying the MAR. [Doc. 1 at 34-36: MAR Order]. Specifically, the MAR court found that the Petitioner's claims regarding the search of his residence, the firearm, and the lawfulness of his sentence "were either previously determined on the merits in [the Petitioner's] appeal from judgment, or [the Petitioner] was otherwise in an adequate position in his appeal to raise these alleged grounds or issues and he failed to do so." [Id. at 35-36]. Accordingly, the MAR court concluded that the Petitioner was barred from raising these grounds in his MAR pursuant to N.C. Gen. Stat. §§ 15A-1419(a)(2) and (3). [Id.]. The MAR court further concluded that the Petitioner had not demonstrated good cause for excusing these grounds for denial; that he had not demonstrated any actual prejudice resulting from his claims; and that he had not demonstrated that the failure to consider his claims would result in a fundamental miscarriage of justice. [Id. at 36]. As

5

for the Petitioner's claim regarding the expungement of certain convictions based upon a change in the law, the MAR court concluded that the House and Senate bills cited by the Petitioner had yet to be enacted into law, and in any event, a request for expungement was not the type of relief available in an MAR proceeding. [Id.].

On March 2, 2020, the Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals, seeking review of the denial of his MAR; the Court of Appeals denied review on March 5, 2020. [Doc. 1 at 20-38, 95–96]. Thereafter, the Petitioner filed a petition for discretionary review with the North Carolina Supreme Court. [Doc. 12-11: Petition for Discretionary Review]. On June 3, 2020, the North Carolina Supreme Court denied review of the Court of Appeals' Order. State v. Robinson, 374 N.C. 745, 842 S.E.2d 581 (N.C. 2020).

The Petitioner filed the present Petition on July 8, 2020.[2] [Doc. 1]. In his first two grounds for relief, the Petitioner claims that officers made "illegal"

---

[2] It is unclear when the Petitioner placed the present § 2254 Petition in the prison mailing system. See Houston v. Lack, 487 U.S. 266, 271-72 (1988) (holding that an inmate's pleading is filed at the time it is delivered to prison authorities for mailing to the court clerk). Although the Petition is dated June 20, 2020 [Doc. 1 at 14], the Petitioner did not declare under penalty of perjury that he delivered the Petition to prison authorities on a particular day. The Petition, however, was postmarked July 8, 2020, and therefore, the Court will find that the Petition was filed as of that day, even though it was not docketed with this Court until July 20, 2020.

6

and "false" statements in order to procure a search warrant following a protective sweep of his house, in violation of the Fourth and Fourteenth Amendments. [Id. at 4-6]. In his third ground for relief, the Petitioner contends for the first time that the predicate drug offense listed in the habitual felon indictment failed to identify a drug amount, thereby rendering the indictment defective. [Id. at 8]. In his fourth ground for relief, the Petitioner challenges for the first time his habitual felon conviction on the basis that the record of his prior convictions was not certified. [Id. at 10].

The Petitioner subsequently filed motions to "supplement" his Petition on three separate occasions. In the first motion, the Petitioner sought to supplement his fourth ground for relief with additional case law. [Doc. 3]. He further alleged that the use of his prior convictions in finding him to be a habitual felon violated the Due Process Clause of the Fourteenth Amendment. [Id. at 2]. In his second motion, the Petitioner sought to supplement his Fourth Amendment claims regarding the search of his residence with additional factual allegations. [Doc. 4]. In his third motion, the Petitioner supplemented his Fourth Amendment claims with additional citations to case law. [Doc. 5]. He further attached documents pertaining to the search of his house, including the search warrant application, the search warrant, and the evidence log of items seized during the search. [Doc. 5-1].

7

On January 19, 2021, the Court conducted an initial review of the Petition, construed the Petitioner's motions to "supplement" as motions to amend and granted the same, and ordered the Respondent to answer or otherwise respond to the § 2254 Petition, as amended. [Doc. 6].

On March 18, 2021, the Respondent filed an initial answer and a motion to dismiss on procedural default grounds. [Docs. 10, 11]. The Petitioner responded to the Respondent's motion to dismiss. [Doc. 16, as amended by Doc. 17]. Subsequently, the Petitioner filed a letter which the Court construes as a motion, seeking transfer to a different prison facility so that he may more easily prosecute his case. [Doc. 19]. Finally, the Petitioner filed a motion, seeking to compel the Court to enter a judgment in his favor. [Doc. 20].

The pending motions are now ripe for disposition.

## II. STANDARD OF REVIEW

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In reviewing constitutional claims adjudicated in state court on the merits, federal district courts may grant relief on such claims only if the state court's decision was (1) "contrary to, or involved an unreasonable application of,

8

clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

Before a petitioner can seek federal habeas relief, he must exhaust all available state remedies. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) ("In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must exhaust all available state remedies before he can apply for federal habeas relief."). In order to exhaust state remedies, a petition "must fairly present the substance of his claim to the state's highest court." Id.

The scope of federal habeas review is also limited by the doctrine of procedural default. If a state court clearly and expressly denies a habeas petitioner's claim based on a state procedural rule, and that rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. See Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect

the judgment and would therefore be advisory."); Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000) ("a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule").  A procedural default also occurs when a petitioner fails to exhaust all available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Coleman, 501 U.S. at 735 n.1.

The doctrines of exhaustion and procedural default "promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights." Huguely v. Clarke, 509 F. Supp. 3d 575, 598 (W.D. Va. 2020) (citing Coleman, 501 U.S. at 730-31).

### III. DISCUSSION

The MAR court determined that the Petitioner could have raised his MAR claims on direct appeal but failed to do so.  As such, the MAR court concluded, all of the Petitioner's MAR claims were procedurally barred

10

Case 3:20-cv-00397-MR    Document 22    Filed 04/05/22    Page 10 of 16

pursuant to N.C. Gen. Stat. § 15A-1419(a)(3).[3] The Fourth Circuit Court of Appeals has "consistently held that § 15A-1419(a)(3) is an independent and adequate state ground for purposes of procedural default." Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008).

The MAR court also held that the Petitioner failed to make the required showing under state law to excuse these grounds for denial. This, too, is an independent state law ground and is adequate to support the state court's judgment. See Lawrence, 517 F.3d at 714; Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998).

To the extent that the Petition, as amended, raises claims that were not asserted either in the MAR or on direct appeal, such claims are also procedurally defaulted. A petitioner does not satisfy the exhaustion

---

[3] The MAR court alternatively held that the Petitioner's MAR claims "were . . . previously determined on the merits in [the Petitioner]'s appeal from judgment" and thus were barred under N.C.G.S. § 15A-1419(a)(2). [Doc. 1 at 35-36]. A dismissal pursuant to § 15A-1419(a)(2), however, is not a state procedural bar that prevents federal habeas review. See Page v. Lee, 337 F.3d 411, 414 n.1 (4th Cir. 2003). Despite the MAR's conclusion, § 1419(a)(2) does not appear to be applicable here. On direct appeal, the Petitioner raised only two issues: the sufficiency of the evidence of his illegal possession of the firearm and the admissibility of the domestic violence protective order. Neither of these issues was presented in the Petitioner's MAR. Also, none of the Petitioner's MAR issues had been raised in his appeal. In addition, the Petitioner's § 2254 claims are not related to either of the issues preserved in his direct appeal. Even if the § 2254 claims were somehow related to those raised in his direct appeal, the appeal did not present the issues as federal constitutional claims. See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994). Further, the Petitioner asserts claims in his § 2254 Petition that were not presented in his MAR. As such, the Petitioner has procedurally defaulted the present issues four different ways.

11

requirement if he "presents new legal theories or factual claims for the first time in his federal habeas petition." See Breard, 134 F.3d at 619. Further, the Petitioner cannot go back to state court and raise them now because they would be procedurally barred under N.C. Gen. Stat. § 15A-1419(a)(3). As such, this procedural bar is also a procedural default. See Castille v. Peoples, 489 U.S. 346, 351 (1989).

Having determined that the Petitioner's claims are procedurally defaulted, the Court next turns to the issue of whether the Petitioner has made a sufficient showing to excuse the procedural default. A habeas claim that is procedurally defaulted must be dismissed unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Cause for a procedural default generally depends on whether a prisoner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Here, the Petitioner argues that cause for procedural default exists because trial and appellate counsel were both constitutionally ineffective. [Doc. 16 at 3-5; Doc. 17 at 2-3]. Ineffective

12

assistance of counsel can be considered cause for a procedural default. Id. However, an assertion of ineffective assistance of counsel must first be exhausted in the state courts as an independent claim before it may be used as cause for procedural default. Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 452 (2000). Here, the Petitioner never raised an independent ineffective assistance of counsel claim in state court. See Robinson, 2019 WL 661556, at *1-2; [Doc. 1 at 39-54]. Because the Petitioner has never raised, let alone exhausted, an independent ineffective assistance claim in state court, the Petitioner cannot use ineffective assistance as cause for procedural default. Murray, 477 U.S. at 489.

The Petitioner further asserts that the Court's dismissal of the federal grounds for relief in the § 2254 Petition will result in a fundamental miscarriage of justice. [Doc. 16 at 5; Doc. 17 at 3-4]. To prevail under the fundamental miscarriage of justice exception, a prisoner must: (1) "support allegations of constitutional error with new, reliable evidence that was not proffered at trial," and (2) "prove that in light of all the evidence, old and new, it is more likely than not that no reasonable juror would have voted to find him guilty beyond a reasonable doubt." Hayes v. Carver, 922 F.3d 212, 217 (4th Cir. 2019) (citation omitted). Here, the Petitioner has not made a claim of the existence of any such evidence here. Accordingly, he has not shown

13

that the Court's failure to address the federal grounds for relief in the § 2254 Petition will result in a fundamental miscarriage of justice.

For all these reasons, the Court concludes that the Petitioner's claims are procedurally defaulted, and that his Petition should be dismissed. The Petitioner's request for an evidentiary hearing [Doc. 3 at 3; Doc. 5 at 4] is denied, and his requests for transfer to a different prison facility [Doc. 19] and for the Court to enter judgment in his favor [Doc. 20] are denied as moot.

## IV. CONCLUSION

The claims raised in the instant amended Petition are procedurally defaulted. As such, the Respondent's Motion to Dismiss will be granted; the Petitioner's § 2254 Petition, as amended, will be denied and dismissed; the Petitioner's request for an evidentiary hearing is denied; and the Petitioner's request for a transfer to a different prison facility and his motion to compel a ruling in his favor are denied as moot.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a prisoner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding

14

Case 3:20-cv-00397-MR   Document 22   Filed 04/05/22   Page 14 of 16

that, when relief is denied on procedural grounds, a prisoner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1) The Respondent's "Motion to Dismiss on Procedural Default Grounds (Independent and Adequate State Law Ground)" [Doc. 11] is **GRANTED**;

(2) The Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. 1, as amended by Docs. 3, 4, 5] is **DENIED AND DISMISSED**;

(3) The Petitioner's letter, which the Court construes as a Motion to Transfer [Doc. 19], and the Petitioner's "Motion to Compel" [Doc. 20] are **DENIED AS MOOT**; and

(4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: April 5, 2022

Martin Reidinger
Chief United States District Judge